NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
FILED

JUN - 6 2005

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 04-CV-304-DLB

JAY TANIGUCHI                                                        PLAINTIFF

VS:                **MEMORANDUM OPINION AND ORDER**

HARLEY LAPPIN, WARDEN, ET AL.                                        DEFENDANTS

Plaintiff Jay Taniguchi, who is presently confined at the United States Prison-Big Sandy in Inez, Kentucky ("USP-Big Sandy"), has filed a *pro se* civil rights action which he has entitled a "Petition for Complaint Under the Civil Rights Act, 42 U.S.C. §1983." Having reviewed the complaint and attachments thereto, the Court determines that submission is more appropriately characterized as a *pro se* civil rights complaint under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388 (1971). The plaintiff has paid the requisite filing fee.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth,* 114 F.3d 601, 607-8 (6th Cir. 1997).

In order to state a claim under *Bivens,* a plaintiff must allege that he has been deprived of a right secured by the federal Constitution by persons acting under color of federal law. *Bivens,* 403 U.S. at 397. *See also Sullivan v. United States,* 2004 WL 193209 (6th Cir. (Ky.) January 30, 2004) (Only Westlaw citation currently available) (this Court, Hon. Karen K. Caldwell presiding, properly

construed plaintiff's complaint as a *Bivens* action, not a habeas petition, where he asserted an Eighth Amendment challenge to the conditions of his confinement).

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

## CLAIMS

The plaintiff alleges that staff at USP-Big Sandy wrongfully rejected his mail on three separate occasions. He claims that these actions violated: (1) his First Amendment right of access to the courts and his right to receive mail from family members, and (2) his Fifth Amendment right to due process of law.

## NAMED DEFENDANTS

The plaintiff names the following defendants: (1) Harley Lappin, Director of the Bureau of Prisons ("BOP"); (2) K. M. White, the Regional Director of the BOP's Mid-Atlantic Region ("MARO"); (3) Dan Dove, Warden of USP-Big Sandy; and (4) Lynn Harper, Inmate Systems Manager ("ISM") of USP-Big Sandy.

## ALLEGATIONS OF THE PETITION

The plaintiff alleges that on three separate dates (March 16, 2004, March 17, 2004, and April 15, 2004) the mailroom staff at USP-Big Sandy improperly rejected several pieces of mail addressed to him. He alleges that the mailroom staff did not follow the procedures governing rejection of

2

inmate mail, which procedures are set forth in the Bureau of Prisons ("BOP") Program Statement 5265.11 and 28 C.F.R. §540. 13. The plaintiff describes the rejected materials as follows:

(1) a "Proffer Agreement" regarding an individual named Lawrence Stevenson, whom the plaintiff identifies as a government witness who testified against him (plaintiff) during his criminal trial, rejected on March 16, 2004;

(2) a photograph of his wife wearing a thin, wet material (bathing suit top/bra) covering part of her breasts, rejected on March 17, 2004;

(3) a photo album, which the plaintiff does not describe with any particularity, rejected on March 17, 2004; and

(4) additional "correspondence" which the plaintiff does not describe with any specificity, except to state that the USP-Big Sandy mailroom staff rejected the material on the basis that it was "sexually explicit" material [Complaint, P. 7, ¶ 23].

### 1. Mail Rejected on March 16, 2004
### Proffer Agreement

The plaintiff alleges that he needed the Proffer Agreement pertaining to another federal inmate, Lawrence Stevenson, in order to fully and adequately prepare a motion to vacate his federal sentence. The plaintiff states that Stevenson testified against him at his criminal trial and was instrumental in his (plaintiff's) conviction. To that extent, the plaintiff argues that he had a legal right to obtain a copy of Stevenson's Proffer Agreement. The plaintiff alleges that he has a projected liberty interest in receiving his mail, and that he was entitled to advance notice of the rejection and an opportunity to protest the rejection.

3

The plaintiff states that his family engaged counsel to prepare a motion to vacate his federal sentence, under 28 U.S.C. §2255. He contends, however, that he needed Stevenson's Proffer Agreement in order to "provide essential information and research to an attorney to assist in his defense." [Complaint, ¶ 12] He contends that the denial of the Proffer Agreement denied him due process of law because he was prevented from filing a "completely accurate PSI." [Complaint, ¶11] Plaintiff states that when he was incarcerated at USP-Lewisburg, he had the Stevenson Proffer Agreement in his possession but that USP-Lewisburg staff requested that he mail his legal documentation home with instructions that it then be sent to his new institution.

Mail room staff at USP-Big Sandy sent the plaintiff a notice stating that the Stevenson Proffer Agreement constituted unauthorized material/contraband [*Id.*, Attchmt A (BP-8)]. The plaintiff states that the rejection notice violated BOP Program Statement 5265.11, ¶10 in three respects: (1) mail room staff used the wrong form to notify the plaintiff of the rejection; (2) the rejection should have been signed by the Warden or an Associate Warden; and (3) the rejection notice should have informed the plaintiff of his right to appeal the rejection.

In the May 4, 2004 denial of the plaintiff's "Request for Administrative Remedy," Warden Dan Dove acknowledged that the rejection notice was sent on a BP-328 Form (Stamps, Negotiable Instrument & Other Returned to Sender), and that it should have been sent on a BP-327 Form (Returned Correspondence). Warden Dove concluded, however, that the use of the wrong form was "irrelevant in terms of the outcome for the unauthorized material." [*Id.*, Attchmt B] The Warden further explained that the Proffer Agreement was a Freedom of Information Act ("FOIA") issue and that Defendant Harper, the ISM, and the BOP's Mid-Atlantic Regional Office had determined that

4

it constituted unauthorized material. The Warden concluded that regardless of the form used, the plaintiff would not have been permitted to receive or view the Proffer Agreement.

On May 13, 2004, K. M. White, the Regional Director of the MARO, upheld the Warden's decision and the decision of USP-Big Sandy mail staff to reject the Proffer Agreement [*Id.*, Attchmt C]. The Regional Director noted that: (1) possession of investigative material related to another inmate is prohibited, and (2) the plaintiff failed to demonstrate that the Proffer Agreement was directly related to a current appeal regarding his criminal case [*Id.*]. The plaintiff attached a copy of the BP-11 which he states he sent to the BOP's General Counsel on June 13, 2004 [*Id.*, Attchmt D]. The plaintiff alleges that he received no response from the BOP's General Counsel. He states that after inquiry within USP-Big Sandy, he was told that the General Counsel's Office never received the BP-11 and that a BP-11 would not be accepted in the future [Complaint, ¶ 44].

## Photograph and Album

The plaintiff complains that USP-Big Sandy mail staff improperly rejected a photograph of his wife. The plaintiff contends that the photograph of his wife, whom he describes as a fitness model, was not sexually revealing because the same photograph was published in an unidentified fitness magazine, available for public purchase. The plaintiff alleges that he has a protected liberty interest in receiving his mail, and that he was entitled to advance notice of the rejection and an opportunity to protest the rejection.

The prison rejected the photograph because in it, the plaintiff's wife was wearing a thin, wet piece of clothing (such as a bathing suit top or a bra) which partially exposed her breast area. The prison staff concluded that even though the thin material covered part of her breasts, the entire chest area was visible through the thin material. Accordingly, the prison determined that photograph

5

violated Program Statement 5265.11, *Correspondence*, which prohibits photographs in which the subject is nude or in which breasts or genitalia are displayed.

As for the manner of rejection, Warden Dove noted in his "Response to Request for Administrative Remedy" that USP-Big Sandy prison staff provided both the plaintiff and his wife with a copy of the BP-328, which stated that one photo and one photo album were being returned. Warden Dove concluded that mail room staff followed the appropriate steps and used the correct forms with regard to the rejection of the photograph and the album.

On May 13, 2004, K. M. White, the Regional Director of the BOP's Mid-Atlantic Region, upheld the Warden's decision and the decision of USP-Big Sandy mail staff to reject the phonograph as being too sexually suggestive. The Regional Director noted that sexually suggestive individual photographs, prints or copies of photographs, and particularly those of an inmate's friends, relative or acquaintance, presented a special concern for the safety and order of a prison [*Id.*, Attchmt C].

The plaintiff attached a copy of the BP-11 which he states he sent to the BOP's General Counsel on June 13, 2004 [*Id.*, Attchmt D]. The plaintiff alleges that he received no response from the BOP's General Counsel. He states that after inquiry within USP-Big Sandy, he was told that the General Counsel's Office never received the BP-11 and that a BP-11 would not be accepted in the future [Complaint, ¶44].

### 2. Mail Rejected on April 15, 2004

The plaintiff alleged in his complaint that on April 15, 2004, USP-Big Sandy prison staff rejected additional correspondence on the basis that it constituted a "sexually explicit" photograph. The plaintiff offered no details as to this particular piece of mail. He admits that he did not initiate

6

the BOP's multi-step administrative exhaustion process "because it was repetitive in nature." [Complaint, ¶ 24].

## RELIEF REQUESTED

The plaintiff seeks a declaratory judgment and temporary and permanent injunctive relief from this Court in the form of an order: (1) instructing the BOP to allow the plaintiff to have "access to all of his legal documentation pertaining to his current confinement"; (2) instructing the BOP to revise its Program Statement which clarifies the definition of "sexually explicit"; (3) instructing the BOP to enact more stringent rules pertaining to the rejection of correspondence by BOP mail room staff; (4) damages in the amount of $20,000.00 for reimbursement of attorney's fees incurred for the filing of the motion under 28 U.S.C. §2255; and (5) $900,000.00 in punitive damages.

## DISCUSSION

The Court is satisfied that the plaintiff undertook the requisite steps to administratively exhaust his various First and Fifth Amendment claims. Based upon the following reasons, however, the complaint suffers from other fatal defects which require dismissal on the merits

### 1. Rejected Proffer Agreement
#### A. Mail Policy Satisfied *Turner v. Safely* Standards

The plaintiff asserts that he had an unfettered right to obtain a copy of the Stevenson Proffer Agreement because it was integral to the preparation of his §2255 motion. It is well settled that "[a] prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir.1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974), and *Parish v. Johnson*, 800 F.2d 600, 603 (6th Cir.1986).

7

Prisoners' First Amendment rights are, however, subject to limitation. The Supreme Court has explicitly rejected heightened judicial scrutiny of prison security policies. Rigorous scrutiny, the Court noted, is simply "not appropriate for consideration of regulations that are centrally concerned with the maintenance of order and security within prisons." *Thornburgh v. Abbott*, 490 U.S. 401, 409-10 (1989). "Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254 (1987). The Supreme Court has further noted that ". . . the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison officials therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 562 (1979).

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S. Ct. 2400 (1987); *Hines v. South Carolina Dept. of Corrections*, 148 F.3d 353, 358 (4th Cir.1998). The *Turner* court reviewed four factors that are relevant in determining the reasonableness of a challenged prison regulation. "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Id*. If not, the regulation is unconstitutional, and the other factors do not matter. *Id*. at 89-90, 107 S.Ct. at 2262.

Unlike the first factor, the remaining factors are considerations that must be balanced together: (2) "whether there are alternative means of exercising the right that remain open to prison

8

inmates"; (3) "the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "ready alternatives" available "that fully accommodate the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 90-91, 107 S.Ct. at 2262; *O'Lone* 482 U.S. at 350-52, 107 S.Ct. 2400; *see also Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1984).

In the instant case, the BOP has determined that investigative reports of other federal inmates should be afforded confidentiality under the FOIA. Thus, the BOP policy of rejecting one inmate's access to investigative material of another inmate has a logical connection to the legitimate government interest (to protect inmate confidentiality) invoked to justify it. Possession of a written proffer agreement which is ordinarily a precursor to a cooperative plea agreement, regarding another inmate could certainly endanger the life of the other inmate. As for the issue of whether the plaintiff has alternative means of exercising his First Amendment right to receive mail, the plaintiff made the following statements in his complaint: (1) that he had all of the documentation he needed to prepare his §2255, including the Stevenson Proffer Agreement, when he was confined at USP-Lewisburg; (2) that USP-Lewisburg required him to send all of his legal paperwork to his home; and (3) that his family engaged counsel to prepare his §2255 motion.

To the extent that the plaintiff alleges that he mailed the Stevenson Proffer Agreement to his family, all that his family had to do was to provide it to the attorney whom it had engaged to prepare the §2255 motion on the plaintiff's behalf. The plaintiff himself had no need for the Proffer Agreement, inasmuch as he could have instructed his family to provide the document to the outside attorney who had been engaged to prepare the §2255 motion. The fact that the BOP mail staff rejected the Proffer Agreement did not prevent the plaintiff from filing a §2255 motion.

9

As for the third *Turner* factor, allowing inmates to have access to the confidential information of other federal inmates would impose additional administrative burdens on the BOP, in terms of having to more carefully review incoming legal documents which contain sensitive and/or confidential information relative to other inmates. The courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner*, 482 U.S. 78; and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987).

Finally, the Court agrees with the Warden that the mailroom's use of the improper rejection form did not prejudice the plaintiff's rights. The plaintiff was clearly notified of the rejection and took immediate steps to appeal the rejection of the Proffer Agreement, even though the wrong form had been used.

### B. Mail Policy Did Not Violate Plaintiff's Right of Access to Court

The plaintiff's argument that his First Amendment right of access to the courts has been violated is also without merit. Where a plaintiff has counsel representing him in a criminal matter, including appeal, he has not been denied access to the courts. *See Johnson-el v. Schoemehl*, 878 F.2d 1043, 1052 (8th Cir. 1989); *Martucci v. Johnson*, 944 F.2d 291, 295 (6th Cir.1991). "[A] prisoner's constitutionally-guaranteed right of access to the courts [is] protected when a state provides that prisoner with either the legal tools necessary to defend himself, e.g., a state-provided law library, *or the assistance of legally trained personnel.*" *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir.1983) (per curiam) (citing *Bounds v. Smith*, 430 U.S. at 828, 97 S.Ct. at 14980) (emphasis added)).

In *Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S.Ct. 2174, 135 L. Ed.2d 606 (1996), the Supreme Court held that an inmate alleging denial of access to the courts must demonstrate an actual injury stemming from defendants' unconstitutional conduct. *See also Ruiz v. United States*, 160 F.3d

10

273, 275 (5th Cir.1998) ("without proving an actual injury, a prisoner cannot prevail on an access-to-the-courts claim."). Thus, to secure relief, the plaintiff must demonstrate actual injury.

By his own admission, the instant plaintiff had the assistance of a private attorney, engaged by his family, to prepare and file his §2255 motion. He further admitted that he sent the Proffer Agreement to his family prior to being transferred to USP-Big Sandy. His family could have sent the Proffer Agreement to retained counsel. Therefore, the plaintiff has not demonstrated that the BOP's denying him access to the Stevenson Proffer Agreement caused him an actual injury (*i.e.*, the filing of an adequate §2255 motion) in this case.

In sum, the plaintiff's First Amendment right of access to courts was in no way impaired. For the same reasons, the plaintiff's due process rights were not adversely affected.

### 2. Photo of Wife and Album

The same inquiry under *Turner* and *O'Lone* apply to the issue of whether USP-Big Sandy mail staff properly rejected the photograph of the plaintiff's wife wearing a tight-fitting top which partially exposed some of her breast area. The BOP relied upon the policy concerns set forth in two Program Statements 5265.10, *Correspondence*, and 5800.10, *Mail Management Manual*, which require the rejection of photographs which display nudity, genitalia, or female breasts. This policy advances valid penological goals of eliminating any stimulant (such as a photograph of a family member) which would, or could, pose a threat to prison security, order and discipline, because it might facilitate or encourage criminal activity or interfere with rehabilitation.

The plaintiff's argument that because the photograph was published in a fitness magazine, and was therefore available for viewing and/or purchase by the public, does not assist his claim. As discussed herein, the BOP is entitled to limit and control inmates' receipt of sexually suggestive mail

11

to ensure order within the prison. The BOP is entitled to impose its own definition of what constitutes sexually explicit or suggestive content, as long as its definition meets the requirements of *Turner*. The fact that the subject photograph may have been published in an unidentified fitness magazine is of no consequence and does not mean that the photograph does not have sexually suggestive overtones. Magazines of all descriptions, which are available to the public for purchase, include very sexually suggestive photographs.

The BOP has the authority and discretion to decide whether a given photograph is sexually suggestive. In *Rogers v. Martin*, 84 Fed.Appx. 577, 2003 WL 23095558, **1 (6th Cir.(Mich.) Dec. 11, 2003) (Not selected for publication in the Federal Reporter), the First Amendment issue involved a prison mail policy prohibiting photographs depicting actual or simulated sexual acts by one or more persons. The prison policy deemed such photographs a threat to security, order and discipline, because they might facilitate or encourage criminal activity or interfere with rehabilitation. The prison confiscated magazines deemed in violation of the policy; notified Rogers of the rejections; held hearings to determine whether the magazines sent to him violated the policy; upheld the rejections; and disposed of the magazines.

The Sixth Circuit upheld the district court's determination that under all four *Turner* factors, the prison policy did not violate the First Amendment. Addressing the fourth issue, "absence of ready alternatives," the Sixth Circuit concluded that redacting every publication containing photographs that violate the rule was not a "ready alternative" to disposing of the offending magazines because of the administrative burden of case-by-case redaction. *Id.*, 84 Fed.Appx. at 579.

The policy of rejecting what the BOP considers to be sexually suggestive and/or explicit photographs of inmates' friends and family members bears a rational relation to the legitimate

12

penological goal of maintaining order and security. The Court concludes that the BOP's sexually suggestive and/or sexually explicit mail policy in the instant proceeding satisfies the *Turner* factors, and that it is rationally related to the legitimate penological interest of maintaining order and security. *See Turner v. Safley*, 482 U.S. 78, 89-91. *Snelling v. Riveland*, 165 F.3d 917, 1998 WL 879747, \*\*1 (9th Cir.(Wash.) December 14, 1998) (Unpublished Opinion) (district court affirmed upon finding that prison policy regarding sexually explicit mail was rationally related to a legitimate penological interest and therefore satisfied the Turner factors); *Harper v. Wallingford*, 877 F.2d 728, 732-34 (9th Cir.1989) (upholding constitutionality of prison regulation that required prison officials to withhold prisoner's mail sent from organization that espoused consensual sexual relationships between adult and juvenile males). The plaintiff's First Amendment claims concerning the other unspecified rejected photograph and album are dismissed as frivolous.

### 3. Claims Against Harley Lappin and K.M. White

To the extent that the plaintiff has named the two BOP officials who denied his grievances on appeal, the plaintiff has not asserted either a legitimate First or Fifth Amendment claim against these individuals. The plaintiff has failed to state a valid claim concerning the prison grievance procedure, because there is no inherent constitutional right to an "effective prison grievance procedure." *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991) (per curiam); *Flowers v. Tate*, 925 F.2d 1463 (6th Cir.1991); *Spencer v. Moore*, 638 F.Supp. 315, 316 (E .D. Mo.1986); *Azeez v. DeRobertis*, 568 F.Supp. 8, 10 (N. D. Ill.1982); *Mays v. Wilkinson*, 181 F.3d 102, 1999 WL 282690, \*\*1-\*\*2 ( 6th Cir. (Ohio) April 28, 1999) (Unpublished Opinion); *Corn v. Lewis*, 996 F.2d 1214, 1993 WL 210702, \*\*1 (6th Cir.(Ky.) June 15, 1993) (Unpublished Opinion).

In *Argue v. Hofmeyer*, 80 Fed.Appx. 427, 430, 2003 WL 22495834, (6th Cir.(Mich.) October 30, 2003) (Not selected for publication in the Federal Reporter), the prisoner-plaintiff argued that the defendants violated his right to petition the government for redress by repeatedly rejecting his grievances and placing him on modified access status. The Sixth Circuit affirmed the district court, citing *Flick v. Alba*, 932 F.2d at 729, and held that the plaintiff's allegations did not state a claim because there is no inherent constitutional right to an effective prison grievance procedure. *Argue v. Hofmeyer*, 80 Fed.Appx. 427, 430, 2003 WL 22495834, **2 - **3. For the same reason, the plaintiff's claims against Lappin and White must be dismissed as frivolous.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** that this action is **DISMISSED**, *sua sponte*, and judgment shall be entered contemporaneously with this memorandum opinion in favor of the defendants.

This 6th day of June, 2005.



Signed By:
David L. Bunning
United States District Judge